Santino M. Tropea (SBN 249215)
santino@caufieldjames.com
CAUFIELD & JAMES, LLP
2851 Camino Del Rio South, Suite 410
San Diego, California 92108
Telephone: (619) 325-0441
Facsimile: (619) 325-0231

Attorneys for Plaintiffs Ismail Jan Unlu
and Meral Unlu, as Trustees of the Unlu
Revocable Trust dated February 13, 2016

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISMAIL JAN UNLU and MERAL UNLU, as Trustees of the Unlu Revocable Trust dated February 13, 2016, | Case No.: |
| Plaintiff, | COMPLAINT FOR: |
| v. | 1) Cost Recovery Under CERCLA § 107(a); |
| KI JOON LEE, individually and as Trustee of the 2001 Ki Joon Lee And Chong Ae Lee Revocable Trust dated October 24, 2001; CHONG AE LEE individually and as Trustee of the 2001 Ki Joon Lee And Chong Ae Lee Revocable Trust dated October 24, 2001; DRAEGER'S SUPERMARKETS, INC., a California Corporation; and DOES 1 through 25, inclusive, | 2) Declaratory Relief Under CERCLA<br>3) Cost Recovery Under the HSAA<br>4) Continuing Nuisance<br>5) Continuing Trespass<br>6) Equitable Indemnity<br>7) Declaratory Relief Under State Law |
| Defendants. | [JURY TRIAL DEMANDED] |

COME NOW Plaintiffs ISMAIL JAN UNLU and MERAL UNLU, as Trustees of the Unlu Revocable Trust dated February 13, 2016 (hereinafter, "Plaintiffs" or "Trust"), and allege upon knowledge as to their own acts, and upon information and belief as to the acts of all others, as follows:

## STATEMENT OF ACTION

1.      Plaintiffs bring this action under 42 U.S.C. § 9607 *et seq.* of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") and various other federal and state statutory and common law theories for, among other relief, the recovery of costs incurred by Plaintiffs in response to the release and threatened release of Hazardous Substances onto certain real property located at 376 First Street in Los Altos, California ("Unlu Site"), which at all relevant times was owned by Plaintiffs. Plaintiffs are informed and believe that Defendants, by and through their ownership of and/or dry cleaning operations on certain real property, have damaged Plaintiffs by causing sudden and accidental releases and/or spills of chemicals at their respective properties, which in turn have caused environmental contamination to exist in the soil and/or groundwater underlying the Unlu Site.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiffs' claims under federal law pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b).

3.      This Court has supplemental jurisdiction over the subject matter of Plaintiffs' other causes of action pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims in this action that they form the same case and controversy under Article III of the U.S. Constitution.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the claims arose out of an actual or threatened release of Hazardous Substances that occurred within this judicial district.

**PARTIES**

5.      Plaintiffs Ismail Jan Unlu and Meral Unlu, as Trustees or their successors, of the Unlu Revocable Trust dated February 13, 2016, at all relevant times resided in Los Altos, California. The Trust was created under the laws of California. The Trust is the current owner of the Unlu Site.

6.      Plaintiffs are informed and believe that Defendant KI JOON LEE, individually and as Trustee of the 2001 Ki Joon Lee and Chong Ae Lee Revocable Trust dated October 24, 2001 ("Lee Trust"), is an individual residing in Los Altos, California, County of Santa Clara, and doing business as Los Altos Laundry & Cleaners. Plaintiffs are informed and believe that Mr. Lee owned the real property located at 392 First Street, Los Altos, California ("LAC Site") and/or operated Los Altos Laundry & Cleaners on the LAC Site between approximately 1958 to the present. Plaintiffs are informed and believe that the Lee Trust has owned the LAC Site from approximately 2001 to the present.

7.      Plaintiffs are informed and believe that Defendant CHONG AE LEE, individually and as Trustee of the 2001 Ki Joon Lee and Chong Ae Lee Revocable Trust dated October 24, 2001 ("Lee Trust"), is an individual residing in Los Altos, California, County of Santa Clara, and doing business as Los Altos Laundry & Cleaners. Plaintiffs are informed and believe that Ms. Lee owned the real property located at 392 First Street, Los Altos, California ("LAC Site") and/or operated Los Altos Laundry & Cleaners on the LAC Site between approximately 1958 to the present. Plaintiffs are informed and believe that the Lee Trust has owned the LAC Site from approximately 2001 to the present. Ki Joon Lee and Chong Ae Lee individually and the Lee Trust are collectively referred to as the "Lees" unless otherwise stated.

8.      Plaintiffs are informed and believe that Defendant DRAEGER'S SUPERMARKETS, INC. ("Draeger's") is a corporation organized and existing under the laws of California with its principal place of business in the City and

2

County of San Francisco, California. Plaintiffs are informed and believe that Draeger's has owned the real property located at 366 First Street, Los Altos, California ("Draeger's Site") between approximately 2001 to the present. Plaintiffs are informed and believe the Draeger's Site was formerly occupied by a drive-in dry cleaners known as Top Cleaners.

9.     The true names and capacities of all remaining Defendants, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs and are named herein as DOES 1-25, inclusive.  Plaintiffs sue these Defendants by those fictitious names.  Plaintiffs are informed and believe, and on that basis allege, that each of the Doe Defendants is in some manner responsible for the injuries and losses suffered by Plaintiffs, and include persons that used, transported, or disposed of, or arranged for the use, transportation or disposal of, Hazardous Substances at, to or from the LAC Site, Draeger's Site, or other sites in the vicinity of the Unlu Site, causing sudden and accidental releases and/or spills of such chemicals which either exist at, or have spread and migrated within the environment toward, the Unlu Site.  The names, capacities and relationships of DOES 1 through 25 will be alleged by amendment to this Complaint when those names are known.

10.    Each of the Defendants identified above shall be collectively hereinafter referred to as "Defendants."

11.    Whenever it is alleged herein that any act or omission was also done or committed by a specifically named Defendant or Defendants generally, Plaintiffs intend to allege and do allege that the same act or omission was also committed by each and every Defendant named herein, including the DOE Defendants, both separately and in concert or conspiring with the other Defendants.  Plaintiffs pray for leave of this Court to amend the Complaint when those names and capacities are ascertained.

## **DEFINITIONS**

12.    Disposal or Dispose: As used in this Complaint, the term "Disposal" or "Dispose" shall have the meaning set forth in SWDA § 1004 (3), 42 U.S.C. 6903(3):

> [t]he discharge, deposit, injection, dumping, spilling, leaking or placing of any solid waste or Hazardous Waste into or on any land or water so that such waste or Hazardous Waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

13.    Environment: As used in this Complaint, the term "Environment" shall have the meaning set forth in CERCLA § 101(8), 42 U.S.C. § 9601(8):

> (A) the navigable waters, the waters of the contiguous zone, and the ocean waters for which the natural resources are under the exclusive management authority of the United States ... and (B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States.

14.    Facility: As used in this Complaint, the term "Facility" shall have the meaning set forth in CERCLA § 101(9), 42 U.S.C. § 9601(9):

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works) well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock or aircraft or (B) any Site or area where a Hazardous Substance has been deposited , disposed of, or placed, or otherwise come to be located.

15.    Hazardous Substance: As used in this Complaint, the term "Hazardous Substance" shall have the meaning set forth in CERCLA § 101(14)(B), 42 U.S.C. § 9601(14)(B) and CERCLA § 101(14)(C), 42 U.S.C. § 9601(14) (C), as listed by the

USEPA at 40 C.F.R. § 302.4 pursuant to its authority under CERCLA § 102. 42 U.S.C. § 9602 and applicable state law.

16.    Hazardous Waste: As used in this Complaint, the term "Hazardous Waste" shall have the meaning set forth in SWDA § 1004(5), 42 U.S.C. § 6905(5):

> [a]ny solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical chemical or infectious characteristics may
>
> (A) cause or significantly contribute to an increase in mortality or any increase in serious irreversible, or incapacitating reversible illness; or
>
> (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

Hazardous Waste shall also include the definition of Hazardous Waste as defined by applicable state law and "Solid Waste" as set forth under SWDA § 1004(27), 42 U.S.C. § 6903(27), and applicable state law.

17.    National Contingency Plan: As used in this Complaint, the term "National Contingency Plan" ("NCP") means the National Oil and Hazardous Substance Pollution Contingency Plan as set forth in 40 C.F.R. Part 300; the Congressionally-mandated plan developed by the EPA that delineates the required procedures for investigating, analyzing remedial alternatives, responding to, and abating the adverse effects of Releases of Hazardous Substances into the Environment.

18.    Release:   As used in this Complaint, the term "Release" shall have the meaning set forth in CERCLA § 101(22), 42 U.S.C. § 9601(22):

> [a]ny spill, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment (including the abandonment or discharging of barrels, containers, and other

closed receptacles containing any Hazardous Substance or pollutant or contaminant).

19.    Response Cost(s): As used in this Complaint, the term "Response Costs" means the costs of "removal" and "remedial actions" of Hazardous Substances and/or Hazardous Wastes, as those terms are defined in CERCLA § 101(23) and (24), 42 U.S.C. § 9601(23) and (24), all other costs to respond to Releases of Hazardous Substances, as defined in CERCLA § 101(25), 42 U.S.C. § 9601(25).  Such costs include, but are not limited to, costs incurred to monitor, assess and evaluate the Release of Hazardous Substances and/or Hazardous Waste as well as costs of removal and Disposal of the Hazardous Substance and/or Hazardous Waste.  Such costs also include those incurred in actions to permanently remedy the Release of Hazardous Substances and/or Hazardous Waste, including, but not limited to (1) the storage, confinement, cleanup of Hazardous Substances or Hazardous Waste, (2) the recycling or reuse, diversion, destruction or segregation of reactive wastes, (3) the dredging or excavation, repair or replacement of leaking containers, and (4) any other such action necessary to protect public health, welfare and the Environment.  The term "Response Cost" also means any costs and attorneys' fees incurred in enforcing either removal or remedial actions or CERCLA's scheme for liability, compensation and cost-recovery, set forth in CERCLA § 102(25), 42 U.S.C. § 9601(25).

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

20.    Plaintiffs are the present owners of the Unlu Trust Site. The property currently consists of a restaurant and parking lot.

21.    Plaintiffs intend to develop the property. The project will consist of demolishing the existing building and constructing a new four–story mixed commercial and residential use building and one and a half levels of below ground parking. The project will further consist of improvements to utilities and public amenities, including sidewalks, immediately surrounding the Unlu Trust Site. The

project is part of a larger August 2018 City of Los Altos Downtown Vision Plan which is a long-term planning document that outlines development planning to enhance the prominence of the City's downtown area.

22.     In or about January, 2020, Plaintiffs initiated the development review process with the City of Los Altos.

23.     In or about June, 2021, Plaintiffs prepared and submitted a Soil Management Plan to the City of Los Altos as part of the redevelopment process. Investigation associated with the redevelopment efforts identified that the Unlu Site has allegedly been impacted by the presence of chlorinated solvents, including tetrachloroethylene ("PCE"), trichloroethylene ("TCE"), as well as other solid and Hazardous Wastes, at concentrations that exceed the regional screening levels for industrial soil as established by the State of California and Environmental Protection Agency. Plaintiffs are informed and believe that the vertical extent of the contaminants may also extend to the shallow groundwater at levels exceeding their applicable Maximum Contaminant Level ("MCL") for drinking water.

24.     Chlorinated solvents and many of its degradation products are closely regulated by the state of California and the federal government. PCE are TCE are each a "Hazardous Substance" as that term is defined in federal law, 42 U.S.C. § 9601(14). They are "solid wastes" and "Hazardous Wastes" as those terms are defined in federal law, 42 U.S.C. § 6903(5), (27).

25.     PCE is an industrial chlorinated solvent that was widely used in the dry cleaning industry since the 1940s.

26.     PCE degrades to TCE, which in turn degrades to DCE, which in turn degrades to vinyl chloride, which in turn degrades to ethene, and finally to carbon dioxide, water, and free chlorine. PCE and its breakdown products are manmade chemicals and are not naturally occurring in the environment. The International Agency for Research on Cancer has classified PCE and TCE as Group 2A carcinogens, which means that PCE and TCE are probable carcinogens to humans.

27.     As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, PCE and many of its degradation products are closely regulated by the state of California and the federal government.

28.     Because of its mobility in groundwater, its toxicity to humans at low levels, and its density (which causes it to sink below the water table), PCE in the environment can be difficult and expensive to cleanup.

29.     Plaintiffs' property is flanked on both sides by two former dry cleaners—Top Cleaners and Los Altos Cleaners. Plaintiffs are informed and believe these former dry cleaners are responsible for the commingled plume of contamination that exists beneath Plaintiffs' property.

**The Lees' Los Altos Cleaners Site Caused And/Or Contributed To The Environmental Contamination At The Unlu Site**

30.     Plaintiffs are informed and believe that the Lees owned and/or operated a laundry and dry cleaners on the LAC Site from approximately 1958 to 2017. The LAC Site is, and at all material times was, a "facility" as defined in CERCLA, 42 U.S.C. § 9601(9).

31.     Plaintiffs are informed and believe that Lees' operations included the generation and storage of chlorinated solvents and other Hazardous Substances at the LAC Site, including but not limited to PCE.

32.     Plaintiffs are informed and believe, and thereon allege, that in or about March, 2017, a Limited Environmental Site Assessment was performed by Environ Phase Consulting. The investigation consisted of five borings was conducted near the former and current dry cleaning machine locations, storage drum, and floor drain. Plaintiffs are informed and believe, and thereon allege, that PCE was detected in 4 of the 5 soil samples and all soil vapor samples in concentrations ranging from 6,000 micrograms per cubic meter ($\mu g/m^3$) to 47,000 $\mu g/m^3$ far exceeding residential levels.

33.     Plaintiffs are informed and believe, and thereon allege, that in or about July, 2017, a further Site Assessment was performed by Applied Water Resources. PCE was detected in all soil vapor samples at concentrations ranging 1,600 µg/m³ to 60,900 µg/m³.

34.     Plaintiffs are informed and believe that, at various times between 1958 to the present, the Lees intentionally, willfully, negligently, suddenly and accidentally caused or contributed to the presence of Hazardous Substances, Hazardous Waste, and/or solid waste in the environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, at the LAC Site by virtue of their past or present handling, storage, treatment, transportation, generation, release, or disposal of Hazardous Substances, Hazardous Waste, and/or solid waste in the environment.

35.     Plaintiffs are informed and believe that the Lees caused one or more sudden and accidental spills and releases, and other discharges, including intentional discharges, of said chlorinated solvents and other Hazardous Substances into the environment. These Hazardous Substances, Hazardous Waste, and/or solid wastes have continued to spread and migrate within the environment toward and onto the Unlu Site.

36.     Plaintiffs are informed and believe that the Lees have been issued a directive by the County of Santa Clara to conduct a remedial investigation and remove the alleged contaminants affecting the LAC and Unlu Sites. Plaintiffs are informed and believe that the Lees have failed to complete the cleanup or obtain closure as directed.

### The Draeger's Site Caused And/Or Contributed To The Environmental Contamination At The Unlu Site

37.     Plaintiffs are informed and believe that Top Cleaners operated a dry cleaners on the Draeger's Site from at least 1986 until 2001. Plaintiffs are informed and believe that Draegers has owned the property from approximately 2001 to the

9

present. The Draeger's Site is, and at all material times was, a "facility" as defined in CERCLA, 42 U.S.C. § 9601(9).

38.     Plaintiffs are informed and believe that dry cleaning operations on the Draeger's Site included the generation and storage of chlorinated solvents and other Hazardous Substances, including but not limited to PCE. The Bay Area Air Quality Management District 2000 Annual Report identified Top Cleaners as using approximately 430 lbs. of PCE per year as of 2001.

39.     Plaintiffs are informed and believe, and thereon allege, that in or about February, 2022, soil vapor probes were placed alongside the Draeger's Site to evaluate whether a release of PCE occurred. Analytical results show extraordinarily high concentrations of PCE in excess of 49,000 µg/m³ in the vicinity of where Plaintiffs are informed and believe the dry cleaning machine was located. Plaintiffs are informed and believe that the sampling indicates a release from the Draeger's Site is impacting the Unlu Site.

40.     Plaintiffs are informed and believe that, at various times between at least 1986 to 2001, the Top Cleaners intentionally, willfully, negligently, suddenly and accidentally caused or contributed to the presence of Hazardous Substances, Hazardous Waste, and/or solid waste in the environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, at the Draeger's Site by virtue of the past or present handling, storage, treatment, transportation, generation, release, or disposal of Hazardous Substances, Hazardous Waste, and/or solid waste in the environment.

41.     Plaintiffs are informed and believe that Top Cleaners caused one or more sudden and accidental spills and releases, and other discharges, including intentional discharges, of said chlorinated solvents and other Hazardous Substances into the environment. These Hazardous Substances, Hazardous Waste, and/or solid wastes have continued to spread and migrate within the environment toward and onto the Unlu Site.

42.     Plaintiffs are informed and believe that Defendant Draeger's, as the current owner of the property, has an obligation to immediately conduct a remedial investigation and remove the alleged contaminants affecting the Draeger's and Unlu Sites. Plaintiffs are informed and believe that Draeger's has failed to complete the cleanup or obtain closure as directed.

**Plaintiffs Have Suffered Damages As A Result Of Defendants' Conduct**

43.     Plaintiffs are informed and believe that Defendants, by and through their conduct and/or omissions, have caused damage to Plaintiffs and Plaintiffs' property.

44.     As a result of and in response to Defendants' releases of Hazardous Substances, Hazardous Wastes, and/or solid wastes and/or failure to mitigate the releases, Plaintiffs have further incurred Response Costs to address to the contamination and will continue to incur Response Costs for monitoring, investigation and remediation of the soil, soil vapor, groundwater, and/or indoor air associated with the releases and threatened releases of Hazardous Substances and Wastes at and emanating from the LAC Site and Draeger's Site. Plaintiffs have incurred such necessary Responses Costs consistent with the NCP, 40 C.F.R. section 300.

45.     Defendants' conduct has further damaged Plaintiffs by reducing the property value of the Unlu Site and subjecting Plaintiffs to potential liability under state and federal environmental laws.

46.     Defendants' conduct has further damaged Plaintiffs as the redevelopment of the property has been stalled due to the finding of Hazardous Substances beneath the property. The City of Los Altos has refused to approve the project unless and until the environmental contamination is addressed.

47.     Plaintiffs have not contributed in any way to the alleged presence of Hazardous Substances on or at the Unlu Site.

48.     The alleged presence of Hazardous Substances on or at the Unlu Site presents an imminent and substantial endangerment to public health and environment.

49.     By letter dated June 1, 2022, Plaintiffs provided notice under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA") to the Lee Defendants, as required by RCRA § 7002(b)(2)(A), 42 U.S.C. § 6972(b)(2)(A), in connection with Plaintiffs' RCRA claims.

50.     Plaintiffs are in the process of providing notice under RCRA with respect to the remaining Defendants and will filing an amended complaint including RCRA claims after the notice requirement has been satisfied.

<u>**FIRST CAUSE OF ACTION**</u>

**(Cost Recovery - CERCLA § 107(a))**

**(All Plaintiffs Against All Defendants)**

51.     Plaintiffs reallege and incorporate by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

52.     CERCLA §107(a), 42 U.S.C.§ 9607(a), provides as follows:

1. the owner and operator of a vessel or a facility,

2. any person who at the time of disposal of any Hazardous Substance owned or operated any facility at which such Hazardous Substances were disposed of,

3. any person who … arranged for disposal or treatment … of Hazardous Substances ... at any facility…

4. …from which there is a release, or a threatened release which causes the incurrence of response costs, of a Hazardous Substance, shall be liable for-

    B.     any other necessary costs of response incurred by any other person consistent with the national contingency plan; …

53.    Plaintiffs have, at the relevant times mentioned herein, been the owners of the Unlu Site. The Unlu Site, LAC Site, and Draeger's Site is each a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

54.    Defendants, and each of them, are "covered person/s" pursuant to CERCLA § 101(21), 42 U.S.C. § 9601(21). Defendants were "owners" or "operators" of their respective facilities, exercised control over and managed their properties, and determined and implemented the policies and procedures by which they operated.

55.    Plaintiffs are informed and believe that Defendants used, processed, produced, stored, treated, and/or generated Hazardous Substances in the course of their operations at their respective facilities.

56.    Plaintiffs are informed and believe that a sudden and accidental "Release" or threatened Release of "Hazardous Substances," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred, and may be continuing to occur, on, under, from and/or in the vicinity of, the LAC Site onto the Unlu Site as a result of Lees' spilling, leaking, disposal, and Release of Hazardous Substances in the course of their operations at the LAC Site.

57.    Plaintiffs are informed and believe that a sudden and accidental "Release" or threatened Release of "Hazardous Substances," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred, and may be continuing to occur, on, under, from and/or in the vicinity of, the Draeger's Site onto the Unlu Site, as a result of Draeger's spilling, leaking, disposal, and Release of Hazardous Substances in the course of their ownership and/or operations at the Draeger's Site.

58.    As a direct and proximate result of the Release(s) of Hazardous Substances that have occurred, and may be continuing to occur, on, under, from, and/or in the vicinity of, the LAC Site and Draeger's Site, Plaintiffs have incurred

and will continue to incur Response Costs as defined in CERCLA § 101(25), 42 U.S.C. § 9601(25) and other damages for the environmental contamination.

59.     Defendants, and each of them, are responsible persons, as defined in CERCLA § 107(a)(2) and/or (3), 42 U.S.C. § 9607(a)(2) and/or (3), because the disposal and/or releases of Hazardous Substances occurred while each of them operated businesses which used Hazardous Substances and generated Hazardous Waste, and because Defendants arranged for the disposal of Hazardous Substances at the LAC Site and Draeger's Site. Defendants are therefore jointly and severally liable for all Response Costs incurred or to be incurred by Plaintiffs.

60.     Defendants are each strictly liable, jointly and severally, to Plaintiffs under CERCLA, 42 U.S.C. § 9607(a), for all Response Costs that Plaintiffs have incurred and will incur as a result of the Releases, in an amount that Plaintiffs will prove at trial in this action.

61.     Plaintiffs did not cause or contribute to, and deny that they are liable for costs incurred as the result of, the alleged release or threatened release of Hazardous Substances at the LAC Site and Draeger's Site. In the interest of an expeditious cleanup and acting in good faith, Plaintiffs have incurred, and will continue to incur, costs to investigate, remove, and remediate the environmental contamination at the Unlu Site. As a direct and proximate result of the releases that have occurred, and may be continuing to occur, on, under, from, and/or in the vicinity of, the LAC Site and Draeger's Site, and the resulting environmental contamination, Plaintiffs have suffered, and/or will suffer, damages as follows:

a. Response Costs;

b. Damages for injury to, destruction of, and/or loss of, natural resources, including, but not limited to, the reasonable costs of assessing such injury, destruction, or loss; and

c. The costs of a health assessment or health effects study and remediation in a total amount that Plaintiffs does not yet know, but no less than $1 million

1    plus interest at the rate provided by law, and which Plaintiffs will prove at

2    trial in this action.

3        62.    The Response Costs that Plaintiffs have incurred, and will continue to

4    incur, are necessary and consistent with the NCP.

5                        **SECOND CAUSE OF ACTION**

6        **(Declaratory Relief - CERCLA § 113(g) and 28 U.S.C § 2201, et seq.)**

7                   **(All Plaintiffs Against All Defendants)**

8        63.    Plaintiffs reallege and incorporate by reference the allegations set forth

9    above and below, inclusive, as though set forth in full herein.

10       64.    An actual legal controversy exists between Plaintiffs, on the one hand,

11   and Defendants, on the other hand. Plaintiffs contends that they are entitled to a

12   declaration that Defendants are liable under CERCLA for all past, present, and

13   future response costs and other damages incurred by Plaintiffs in connection with

14   the Unlu Site. Plaintiffs are informed and believe that Defendants contend

15   otherwise.

16       65.    Plaintiffs desire and are entitled to a declaration of the parties'

17   respective rights and duties pursuant to CERCLA § 113(g), 42 U.S.C. § 9613(g)

18   and 28 U.S.C. § 2201 *et seq*., including Defendants' liability to Plaintiffs for past,

19   present and future response, removal and remediation costs incurred and to be

20   incurred by Plaintiffs in implementing the remedial action plan for responding to

21   the Releases of Hazardous Substances and/or Hazardous Waste and adverse

22   environmental consequences at issue, and other penalties and/or damages imposed

23   on Plaintiffs in connection with the Unlu Site.

24       66.    No adequate or speedy remedy exists for Plaintiffs in the absence of

25   such a judicial declaration. Substantial costs will be incurred by Plaintiffs over time

26   and after conclusion of this action.  Unless declaratory relief is granted, it will be

27   necessary for Plaintiffs to commence many successive actions against Defendants,

28   and each of them, to secure compensation for the costs incurred and damages

sustained, thus requiring a multiplicity of suits. A judicial determination of each of the Defendants' liability to Plaintiffs is therefore necessary and appropriate at this time in order the Plaintiffs may ascertain their rights against the Defendants.

### **THIRD CAUSE OF ACTION**

### **(Cost Recovery Under HSAA)**

### **(All Plaintiffs Against All Defendants)**

67.    Plaintiffs reallege and incorporate by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

68.    The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code § 25300 et seq. ("HSAA"), was enacted to encourage the expedient cleanup of "hazardous substances" that have been released into the environment. In furthering this goal, the California Legislature included the statutory right of indemnity and contribution for those parties who clean up contaminated properties from those parties who are responsible for the contamination.

69.    Health & Safety Code § 25363(d) provides that "[a] person who has incurred response or corrective costs in accordance with [HSAA] or the federal [CERCLA, 42 U.S.C. § 9601 et seq.] may seek contribution or indemnity from any person who is liable pursuant to [HSAA]."

70.    A "liable person" is defined in section 25323.5(a)(1) of HSAA as "those persons described in section 107(a) of [CERCLA] (42 U.S.C. Sec. 9607(a))."

71.    "Those persons described in section 107(a)" of CERCLA include the owner and operator of a facility, any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed, and any person who arranged for disposal or treatment of hazardous substances for transport to a disposal facility. 42 U.S.C. § 9607(a).

72.     Plaintiffs are each a "person" within the meaning of Health & Safety Code § 25319.

73.     Defendants are each a "liable person" within the meaning of Health & Safety Code § 25323.5(a)(1) and 42 U.S.C. § 9607(a).

74.     There have been releases or threatened releases of hazardous substances into the environment at the Site, including at and from equipment at the LAC Site and Top Cleaners Site, including during the time Defendants owned their respective properties.

75.     As a direct and proximate result of Defendants' actions that caused or contributed to releases of hazardous substances at the LAC Site and Top Cleaners Site, and onto and beneath the Unlu Site, Plaintiffs have incurred and will continue to incur costs for monitoring and investigation, and removal or remedial actions taken in accordance with Chapter 6.5 commencing with Health & Safety Code § 25100 and/or CERCLA. These include, but are not limited to, costs incurred for identification of potentially responsible parties, investigation, testing, site assessment, monitoring, mitigation, removal, and remediation of the contamination.

76.     Plaintiffs gave the Department of Toxic Substances Control ("DTSC") notice of the commencement of this action, as required by section 25363(d) of the Health & Safety Code.

77.     Accordingly, as a direct and proximate result of the actions and omissions of Defendants, as alleged herein, and under strict liability imposed by the HSAA, Plaintiff is entitled to indemnity and contribution from Defendants for the past and future costs of such removal or remedial action, including any work or activities related to such removal or remedial action such as investigation, mitigation, or cleanup and abatement work at the Site.

## **FOURTH CAUSE OF ACTION**

### **(Continuing Nuisance)**

### **(All Plaintiffs Against All Defendants)**

78.  Plaintiffs reallege and incorporate by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

79.  Plaintiffs have, at the relevant times mentioned herein, been the owners of the Unlu Site.

80.  Plaintiffs are informed and believe that a "Release" or threatened release of "Hazardous Substances," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred, and may be continuing to occur, on, under, from and/or in the vicinity of, the Draeger's Site and LAC Site onto the Unlu Site, as a result of Defendants' ownership and/or operations at their respective Sites.

81.  Plaintiffs are informed and believe that Defendants' acts and/or omissions, caused, created, maintained, and/or contributed to the environmental contamination at the Unlu Site.

82.  Plaintiffs are informed and believe that Defendants, and each of them, have allowed, and continue to allow, the environmental contamination to persist.

83.  Defendants' Releases of Hazardous Substances have unreasonably and substantially interfered with and obstructed Plaintiffs' free use and enjoyment of the Unlu Site and other rights of private occupancy, constituting a nuisance within the meaning of Cal. Civil Code § 3479, which nuisance is continuing and abatable, by, among other things:

a. Posing an unreasonable and substantial threat to human health;

b. Being indecent or offensive to the senses;

c. Preventing the sale, use, and/or development of the Unlu Site;

d. Diminishing the fair market value of the Unlu Site;

e. Forcing Plaintiffs to incur liability, damages, and/or costs, including attorneys' fees, expenses, and costs, caused by the presence of the environmental contamination.

84.    Plaintiffs are informed and believe that Defendants knew or should have known that Plaintiffs did not consent to the nuisance.

85.    Plaintiffs are informed and believe that the environmental contamination can be can be discontinued and/or abated.

86.    Plaintiffs have notified Defendants that the environmental contamination unreasonably and substantially interferes with Plaintiffs' use and enjoyment of the Unlu Site and demanded that the Defendants, and each of them, discontinue and/or abate the environmental contamination.

87.    Defendants have failed and refused, and continue to fail and refuse, to discontinue and/or abate the environmental contamination.

88.    As a direct and proximate result of the acts, omissions, and conduct of Defendants and of the continuing nuisance caused thereby, Plaintiffs have suffered and continue to suffer damages as previously described herein, including other special, consequential, incidental, and general damages to be proven at trial.

89.    Plaintiffs also request that this Court issue a temporary restraining order, a preliminary injunction, and a permanent injunction requiring the Defendants, and their respective agents, representatives, servants, and employees, and all persons acting by or under their authority or in concert with them, to conduct the necessary environmental remedial investigation and remediation to discontinue and/or abate the environmental contamination.

## FIFTH CAUSE OF ACTION

### (Continuing Trespass)

### (All Plaintiffs Against All Defendants)

90.    Plaintiffs reallege and incorporate by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

91.     Plaintiffs have, at the relevant times mentioned herein, been the owners of the Unlu Site.

92.     Plaintiffs are informed and believe that a "Release" or threatened release of "Hazardous Substances," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred, and may be continuing to occur, on, under, from and/or in the vicinity of, the Draeger's Site and LAC Site onto the Unlu Site as a result of Defendants' ownership and/or operations at their respective Sites.

93.     Plaintiffs are informed and believe that Defendants, without the consent or knowledge of Plaintiffs, released Hazardous Substances and knew or should have known that any such release would contaminate the soil, soil vapor, groundwater, and indoor air at, beneath, and around the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil, surface water, and groundwater into adjacent properties and buildings, including the Unlu Site.

94.     Plaintiffs are informed and believe that Defendants, and each of them, have continually entered, encroached, and intruded upon the Unlu Site without Plaintiffs' consent by allowing the environmental contamination, for which the Defendants are, and were, responsible, to persist.

95.     Defendants' Releases of Hazardous Substances have unreasonably and substantially interfered with and obstructed Plaintiffs' exclusive possession and control of the Unlu Site.

96.     Plaintiffs are informed and believe that the environmental contamination can be can be discontinued and/or abated at a reasonable cost by reasonable means.

97.     Plaintiffs have notified Defendants that the environmental contamination unreasonably and substantially interferes with Plaintiffs' use and

COMPLAINT

enjoyment of the Unlu Site and demanded that the Defendants, and each of them, discontinue and/or abate the environmental contamination.

98.    Defendants have failed and refused, and continue to fail and refuse, to discontinue and/or abate the environmental contamination.

99.    As a direct and proximate result of the acts, omissions, and conduct of Defendants and of the continuing trespass caused thereby, Plaintiffs have suffered and continue to suffer damages as previously described herein, including other special, consequential, incidental, and general damages to be proven at trial.

100.   Plaintiffs also request that this Court issue a temporary restraining order, a preliminary injunction, and a permanent injunction requiring the Defendants, and their respective agents, representatives, servants, and employees, and all persons acting by or under their authority or in concert with them, to conduct the necessary environmental remedial investigation and remediation to discontinue and/or abate the environmental contamination.

## SIXTH CAUSE OF ACTION

### (Equitable Indemnity)

### (All Plaintiffs Against All Defendants)

101.   Plaintiffs reallege and incorporate by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

102.   Plaintiffs are informed and believe that the liability, if any, that Plaintiffs may have to any other person, government or regulatory agency, under any law, regulation, or common law principle, relating to the alleged contamination at and emanating from the Unlu Site, is the proximate cause, in whole or in part, of the acts and omissions of Defendants.

103.   As a direct and proximate result of spills and other releases of Hazardous Substances as alleged above, Plaintiffs have incurred and will incur Response Costs, beyond their fair share, if any, for investigation, remediation, or other response to the contamination.

21

104.   As between Plaintiffs and Defendants, Defendants are solely responsible for all Response Costs for monitoring, investigation and remediation of the soil, soil vapor, groundwater, and/or indoor air associated with the releases and threatened releases of Hazardous Substances and Wastes at and emanating from their respective Sites, and any other costs associated with the environmental contamination.

105.   In the event that Plaintiffs are adjudged liable for any or all relief requested in any judicial or administrative action, arising out of or related to the alleged contamination at and emanating from any Site, brought against Plaintiffs by any persons or entities, public or private, such liability is purely secondary, imputed, or technical.

106.   Plaintiffs are entitled to equitable indemnity and/or contribution, including (without limitation) under California Civil Code § 1432, against all costs, arising out of, or relating to the alleged contamination at and emanating from Defendants' Sites, and any other costs he has incurred or will incur in the future.

## SEVENTH CAUSE OF ACTION

### (Declaratory Relief Under State Law)

### (All Plaintiffs Against All Defendants)

107.   Plaintiffs reallege and incorporate by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

108.   An actual legal controversy exists between Plaintiffs, on the one hand, and Defendants, on the other hand. Plaintiffs contend that they are entitled to a declaration that Defendants are liable for all past, present, and future response costs and other damages incurred by Plaintiffs in connection with the Unlu Site. Plaintiffs are informed and believe that Defendants contend otherwise.

109.   Plaintiffs desire and are entitled to a declaration of the parties' respective rights and duties pursuant to Cal. Civil Proc. Code § 1060, including Defendants' liability to Plaintiffs for all Response Costs incurred and those to be

incurred by Plaintiffs in implementing the remedial action plan for responding to the Releases of Hazardous Substances and/or Hazardous Waste and adverse environmental consequences at issue.

110.   No adequate or speedy remedy exists for Plaintiffs in the absence of such a judicial declaration. Substantial costs will be incurred by Plaintiffs over time and after conclusion of this action.  Unless declaratory relief is granted, it will be necessary for Plaintiffs to commence many successive actions against Defendants, and each of them, to secure compensation for the costs incurred and damages sustained, thus requiring a multiplicity of suits. Plaintiffs therefore request a declaration from the Court setting forth Plaintiffs' and Defendants' liability for past, present and future response, removal and remediation costs, and other penalties and/or damages imposed on Plaintiffs in connection with the Unlu Site.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor for the following:

1. For all past and future response, removal or remedial action costs incurred by Plaintiffs, in excess of at least $1,000,000, the exact amount of which will be ascertained according to proof;

2. For a declaration that Defendants are liable under CERCLA for all past, present, and future response costs and other costs which may be incurred by Plaintiffs at, or in the vicinity of, the Unlu Site;

3. For a preliminary and permanent injunction requiring Defendants to undertake at their sole cost and consistent with the NCP at 40 C.F.R. Part 300, all actions necessary to investigate and abate the nuisance conditions and endangerments to health or the environment that may be presented by Defendants' use and disposal of "Hazardous Substances" as alleged above, including installing treatment systems and implementing

monitoring programs, to prevent further migration of hazardous wastes from each Defendant's Site into and around the Unlu Site;

4. For an order requiring Defendants to undertake at their sole cost all actions necessary to investigate and remediate the alleged contamination;

5. For treble damages pursuant to California Code of Civil Procedure § 732.

6. For compensatory and consequential damages;

7. For an award to Plaintiffs for costs of litigation, including attorneys' fees and expert witness fees pursuant to Civ. Proc. Code §§ 1021.5 and 1021.6;

9. For exemplary damages against Defendants according to proof;

10. For punitive damages against Defendants according to proof;

11. For prejudgment and post-judgment interest;

12. For all costs of suit herein;

13. For such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand trial by jury of any and all issues so triable.

Respectfully submitted,

DATED:  July 6, 2022                    Caufield & James, LLP

*/s/ Santino M. Tropea*

Santino M. Tropea, Esq.
Attorneys for Plaintiff Ismail Jan
Unlu and Meral Unlu Trustees or their
Successor, of the Unlu Revocable
Trust dated February 13, 2016